*E-FILED - 1/9/12*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff/Respondent,<br><br>　　v.<br><br>THIN EDWARD SOU,<br><br>　　　　　　Defendant/Movant. | NO. C-08-3072-RMW<br>Related Criminal Case: CR-03-20110-RMW<br><br>ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 |

**I**

Thin Edward Sou moves pursuant to 28 U.S.C. § 2255 to set aside his sentence and to be allowed to accept a more lenient sentence than the one he received. Sou is currently serving a 240-month sentence imposed on October 28, 2005. The basis of his motion is that he was denied his Sixth Amendment right to the effective assistance of counsel when his trial counsel failed to: (1) advise him of a ten-year plea offer; (2) adequately advise him of the advantages of pleading guilty; (3) advise him to plead guilty; (4) adequately investigate relevant sentencing laws; and (5) convey the Government's plea offer as it related to the superseding indictment.

Sou's trial counsel, James Ramsaur, represented to the court shortly before trial began in an *in camera* hearing on Sou's request for new counsel that the Government had offered a plea agreement for a 10-year sentence but withdrew it about the time the superseding indictment was filed. The following exchange took place on October 24, 2004 between the court and defense

counsel Ramsaur during the *in camera* hearing:

> Mr. Ramsaur: My client was, wanted to cut a deal, and what he wanted to take is he would plead guilty if he could get a 10 year mandatory minimum sentence. [Referring to what defendant told his counsel he wanted at his meeting with counsel the day before the pretrial conference held on October 14, 2004]
>
> The Court: Was there a deal offered at some point?
>
> Mr. Ramsaur: There was much earlier when the first – it was with the first information, your honor, and that deal was basically just plead mandatory minimum 10 years.
>
> The Court: So what he was offered now –
>
> Mr. Ramsaur: It's practically doubled what the – it's a 10 year mandatory minimum, and now with the weight clauses and the third count, you're looking at something close to anywhere, 16, 18, 20 years dependent upon the weight.
>
> The Court: And when did Mr. Glang withdraw the offer?
>
> Mr. Ramsaur: About three or four months ago, judge, about the time that – there was a time he came in and said "I'm going to have to start working on this case," and it seems to me that was about June or July.
>
> And then there were a whole series of people who pled in this court, and then there was a filing of the second information, and then he had to go do all the work to get interpreters and make the translations and get all those things.
>
> And he made it public knowledge to everybody that when and if he had to do that, all the deals were going to be off the table, and that was, that was communicated to my client quite clearly, judge.

Transcript from *In Camera* Hearing on October 26, 2004, p.13:25-15:6.

In response to the current motion, the Government's counsel, John Glang, denied that any offer was ever extended for a 10-year sentence in exchange for a guilty plea. The Government's response included a declaration from AUSA Glang that no such offer was ever made. The Government's response also included a declaration from Attorney Ramsaur confirming that no such offer was ever made and that his previous statement was in error.

The court found the evidence presented by the pleadings disturbingly conflicting as to whether a 10-year offer was ever made by the Government and whether defense counsel ever discussed such an offer with his client. Therefore, the court ordered an evidentiary hearing and appointed counsel for defendant. The essential issues to be resolved were: (1) whether a 10-year offer was made; (2) whether, if not expressly made, defense counsel had reason to believe that one could have been negotiated and, in fact, could have done so; (3) whether defense counsel adequately

ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT CONVICTION PURSUANT TO 28 U.S.C. § 2255
NO. C-08-03072, CR-03-20110-RMW        2

counseled defendant about the availability of a deal including a deal that depended upon cooperation; and (4) whether defendant was prejudiced by any failure to give advice or by the provision of inadequate advice concerning a 10-year deal. *See United States v. Blaylock*, 20 F.3d 1458, 1465-66 (9th Cir. 1994) (district court abused its discretion in denying evidentiary hearing on defendant's claim of ineffective assistance where counsel failed to inform defendant that Government had made plea offer). Both an attorney's failure to communicate a plea offer and an attorney's incompetent advice resulting in the defendant's rejection of a plea offer constitute unreasonable conduct under prevailing professional standards. *Id.*

**II**

The evidence at the evidentiary hearing showed that Ramsaur was assigned to represent Sou in September 2003. Glang advised Ramsaur in late 2003 or early 2004 that the Government would accept a guilty plea from Sou with a Guideline sentence based upon an offense level of 38 minus 3 levels for acceptance of responsibility leaving an offense level of 35. The Government apparently estimated Sou's criminal history category as II or III. The offer was not an attractive one as, other than 3 points for acceptance of responsibility, it offered Sou no incentive to plead. Ramsaur's notes for February 12, 2004 reflect a meeting with AUSA Glang outside court where such an offer was discussed. The notes also suggest, consistent with the testimony of both Glang and Ramsaur, that the Government was very interested in learning the identity of the pilot who the Government had learned was going to fly a large amount of "ice" to Hawaii.[1] There is little question that if Sou provided useful information in this regard, the Government would have been willing to make a motion for a downward departure under U.S.S.G. § 5K1.1. However, Glang's policy was not to suggest the extent of departure until after any assistance had been provided and could be evaluated.

After hearing the testimony of Attorney Ramsaur, AUSA Glang and defendant Sou and reviewing the other evidence offered, the court is satisfied that no offer was ever made by the

---

[1] The referenced page of Ramsaur's notes reflect "38 <3>/ 35/ Cat. III 5K1.1/ 'pilot'" and written beside this entry is "meeting with (?) AUSA Glang outside court." Ex. 3 at 72. Further down the page is the notation "<u>2004</u> 210-262." *Id.* This notation was apparently added by Ramsaur after he had been replaced as counsel. The copy of Ramsaur's notes that was given to Alfredo Morales, the attorney who replaced Ramsaur for sentencing purposes, did not contain this notation. Ramsaur had no explanation for this addition.

Government to allow defendant to plead guilty in exchange for a sentence that included a mandatory minimum sentence of 10 years. The primary reason is that AUSA Glang testified unequivocally that no such offer was made. This makes sense because the Government's case against Sou was factually very strong and the Government's primary goal was to find out who the pilot was. Entering a plea agreement with Sou without assurance that Sou could provide substantial assistance would have been inconsistent with Glang's stated policy with respect to when he would agree to make a 5K1.1 motion.

Sou, however, claims that Ramsaur never explained what he, Sou, was exposed to or explained the Sentencing Guidelines. He claims that he told Ramsaur from the beginning of Ramsaur's representation that he would "snitch" and accept a mandatory minimum sentence of 10 years.

Ramsaur testified that Sou was not interested in cooperating and providing information about the pilot. Ramsaur claims he made clear to Sou on several occasions that the Government was most interested in finding out who the pilot was. However, at the same time, Ramsaur testified that he was unclear as to whether he ever asked Sou if he knew who the pilot was. Ramsaur also was unclear as to whether he ever independently calculated the applicable Sentencing Guidelines. Ramsaur claims to have discussed with Sou on several occasions whether he wanted to plead guilty but that Sou was not interested until about two to three weeks before trial when he said he would accept a mandatory minimum sentence of ten years. Ramsaur passed that on to Glang, who was not interested.

Ramsaur's testimony at the hearing concerning what he explained to Sou about the Guidelines and his exposure was at times vague and equivocal. Although he may not have ever independently done a Guideline calculation, the evidence suggests he at least passed on the Government's calculation which was essentially correct. Sou knew he faced a lengthy sentence. Otherwise, he would not have told Ramsaur that he was willing to take a sentence of 10 years. It does appear, however, that Ramsaur did not focus on explaining to Sou the importance of attempting to negotiate a deal before the Government's filing of the superseding information which appears to have been the Government's deadline for reaching plea agreements.

In contrast to Ramsaur, counsel for all the co-defendants had been able to negotiate offers for 10 years or less. However, it is also true that the Government looked at the case against Sou as the strongest among those it had against the conspirators.

Sou's testimony that he was always willing to "snitch" and testify against his co-conspirators appeared suspiciously self-serving. Although Sou claims that he was willing to testify against the pilot (or three pilots who Sou apparently claims were involved), this claim is particularly suspect. Sou has been through a sentencing hearing with a new counsel and through this § 2255 proceeding and has not explained who the pilot or pilots were or done anything to show that he was willing to cooperate or had information that would have been useful to the Government.

## IV

### A. Ineffective Assistance of Counsel

The test for evaluating whether counsel was ineffective is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The movant must establish that: (1) counsel's representation "fell below an objective standard of reasonableness," and (2) that such performance prejudiced the defendant. *Id.* at 688. To establish prejudice the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. There is a strong presumption "that counsel's conduct falls within the wide range of professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002). If ineffective assistance is established for failure to properly advise as to a plea offer, the appropriate remedy is the reinstatement of the original offer, unless the government can show that intervening circumstances compel that it modify or withdraw its original offer. *United States v. Blaylock*, 20 F.3d 1458, 1468-69 (9th Cir. 1994).

### B. Counsel's Performance Was Marginal But Within the Wide Range of Reasonableness

The decision whether or not to accept a plea offer is a critical stage of the prosecution at which the Sixth Amendment right to counsel attaches. *Turner v. Calderon*, 281 F.3d 851, 879 (9th Cir. 2002). A defendant has the right to make a reasonably informed decision whether to accept a

plea offer. *Id.* at 880-81; *Goudie v. United States*, 313 F. Supp. 2d 1320, 1332 (S.D. Fla. 2004). In advising a defendant, counsel cannot be required to accurately predict what the jury or court might do, but counsel can be expected to give the defendant the information he needs to make an intelligent decision. *Turner*, 281 F.3d at 881; s*ee also Nunes*, 350 F.3d 1045,1053-54 (9th Cir. 2003) (failure to accurately convey terms of plea offer). Grossly erroneous advice regarding the consequences of accepting a plea offer combined with erroneous advice on the probable effects of going to trial constitutes ineffective assistance. *See Sophanthavong v. Palmateer*, 378 F.3d 859, 868 (9th Cir. 2004) (citing *United States v. Keller*, 902 F.2d 1391, 1394 (9th Cir. 1990).

The question here under the first prong of *Strickland*, however, does not involve the failure to properly advise Sou on whether to take a plea offer as one was not made. Rather, the essential questions are: (1) whether defense counsel's conduct fell below the standard of reasonableness because defense counsel had reason to believe a favorable plea agreement could have been negotiated and failed to make a reasonable effort to do so; and (2) whether defense counsel adequately counseled defendant about the potential availability of a U.S.S.G. § 5K1.1 substantial assistance departure if he provided useful information about the pilot or pilots.

There is some evidence that suggests that a plea agreement could have been negotiated even without offering information about the pilot or pilots. All the other defendants either took or were offered plea agreements involving custody of 10 years or less. Some had involvement equal to or greater than Sou's and none identified the pilot or pilots. Ramsaur appears to have made some effort to negotiate a plea before the superseding indictment was filed which was apparently the cutoff date for reaching agreement with the Government. He did have some discussion with the Government but it appears to have been limited. It does not appear he had a "heart-to-heart" discussion with Sou in which he advised Sou of his exposure and found out what Sou would accept to avoid trial. Ramsaur appears to have just assumed that Sou would not agree to anything in excess of 10 years. It does not appear, however, that even if Ramsaur had been more thorough and forceful with his client and persuaded him to agree to a sentence in excess of 10 years that the Government would have agreed to anything below the Guideline range. The Government viewed the case against Sou as factually the strongest case of those against the conspirators and was not interested in dealing absent

information about the pilot or pilots. Although Ramsaur's effort could have been more aggressive, under the circumstances of the case, his efforts fell within the wide range of acceptable professional performance.

With respect to Ramsaur's alleged failure to follow-up on Sou's purported willingness to cooperate and "snitch" on his co-conspirators, the court finds that Sou was aware of the Government's interest in the pilot but never provided Ramsaur with information to convince the Government that Sou would and could effectively cooperate. Ramsaur perhaps should have more fully explored with Sou what he knew and what he might reasonably expect from cooperation. However, the court is not persuaded that Sou wanted to cooperate from day one as he claims or even had useful information. He did not make any offer to explain who was involved at sentencing or at the hearing in these proceedings. Although he testified there were three pilots, he provided no names. He has not offered persuasive evidence that he had valuable information or was actually willing to provide the Government with any substantial assistance. Again, although Ramsaur's performance can be questioned, it did not fall below the standard of care.

**C. Lack of Prejudice**

The second question under the *Strickland* test is whether Sou was prejudiced by his counsel's deficiency, specifically, whether there is a reasonable probability that the outcome would have been different had counsel's performance been better. In other words, is it reasonably probable that Ramsaur could have negotiated a plea agreement that Sou would have accepted? "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceedings." *Strickland*, 466 U.S. at 693. In light of the Government's position with respect to making a deal with Sou and Sou's failure to show he had information about the pilot or pilots that the Government would have found useful, Sou has failed to show that the Government would have offered a plea agreement, let alone one that Sou would have accepted. *See Jones v. Wood*, 114 F.3d 1002, 1012 (9th Cir. 1997) (finding that defendant's contention that he would have "cut his losses" and accepted the plea offer if he believed it was open was implausible in light of his belief in the weakness of the State's case and his steadfast claim of innocence); *compare Blaylock*, 20 F.3d at 1466-68 (finding prejudice because there was a reasonable likelihood that defendant would

accepted the plea offer if properly advised). Ramsaur's performance did not prejudice Sou.

For the reasons stated, the court denies Sou's motion to vacate his and sentence and allow him to accept a 10-year sentence or some other reduced sentence.

**V**

Rule 11(a) of the Rules Governing Section 2255 Proceedings requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

A certificate is denied. Ramsaur's performance fell within the wide range of acceptable representation. In any event, Sou was not prejudiced as the Government did not make, nor was it willing to consider absent substantial assistance, a plea offer which Sou would have been willing to take. Sou has also not shown that he had useful information which would have led to a § 5K1.1 motion by the Government.

Dated: 1/9/12

*Ronald M Whyte*

RONALD M. WHYTE
United States District Judge

Copy of Order Mailed Electronically on 1/9/2012 To:

John N. Glang, AUSA
Office of the United States Attorney
150 Almaden Blvd, Suite 900
San Jose, CA 95113
Email: John.Glang@usdoj.gov

    Attorneys for Plaintiff United States of America

Thin Edward Sou   (*Mailed via USPS on 1/9/2012*)
F.C.I. Elkton
P.O. Box 10
Lisbon, OH 44432
    Movant/Defendant

Eric Russell Krebs
Law Offices of Eric R. Krebs
44 Montgomery Street
Suite 3585
San Francisco, CA 94104
Email: erkrebs@yahoo.com
    Attorney for Defendant

ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT CONVICTION PURSUANT TO 28 U.S.C. § 2255
NO. C-08-03072, CR-03-20110-RMW     9